(Decided 20th March, 1868.)

M. T. GOLDSBOROUGH, Administrator of NICHOLAS GOLDSBOROUGH, Deceased, *vs.* WILLIAM CRADIE, THOMAS M. DAVIS and JOHN W. CLYMER.

*Prayers and Instructions to the Jury—Joinder and Non-joinder of Plaintiffs—Res gestæ—Evidence— Action to recover a Reward for the apprehension of Runaway slaves—Assignment of a chose in action—Practice.*

The refusal of the Court below to give an instruction asked for, is no ground for reversal, if the party asking it, gets the benefit of the propositions of law embraced therein, by the subsequent granting of another instruction.

In an action by three persons, to recover a reward offered for the apprehension and delivery in jail of certain runaway slaves. HELD:

1st. That it was not necessary that all of the plaintiffs should have been originally concerned in arresting, securing and restoring the negroes to the owner.

2d. That in order to establish a valid claim for their services, they were required to prove that it was through their agency. the alleged apprehension and returning of the property were secured, but that might have been effected by each performing a part.

Goldsborough, Adm'r, *vs.* Cradie, *et al.*

3d. That the right to demand the reward offered could not be maintained until the negroes were apprehended and placed in 'jail, in conformity to the advertisement, or delivered to the owner, or his agent; and any person who aided in accomplishing such result might join in a suit to recover the same.

4th. That a person who participated in the securing and delivery of the negroes, although not in the arrest, might be joined in the action.

The defendant having asked a witness as to what was stated to him by one of the negroes, for the purpose of proving that the negro asked for a pass to enable him to get back to his master in Maryland. HELD:

1st. That the question was properly rejected by the Court below.

2d. That the statements of the negroes were not evidence *per se*, and could only be introduced, if objected to, where they were a part of the *res gestæ*, but not as distinct and independent testimony; no testimony having been previously offered by the plaintiffs of any declaration of the negroes made at a time and place, in reference to which the witness was required to testify.

Upon no fair and just principle could the reward be claimed, unless at the time of their alleged apprehension the negroes still continued absconding and runaways from their owner.

If the negroes were returning to their owner, of which the plaintiffs or either of them were apprised, upon no grounds of law or justice, nor upon any theory of a contract, express or implied, could the reward offered be claimed by the plaintiffs.

On the contrary, if the plaintiffs, or either of them, having learned that the negroes were in the act of returning home to their owner, and would do so of their own motion, or with any one offering to take them, designed to avail themselves of such opportunity to arrest them, and to prevent, hinder and intercept their voluntary return home, with a view to their own gain, at the expense of the owner, such conduct and combination, so far from entitling them to a reward, would furnish evidence of a conspiracy to defraud the owner of the negroes.

An assignment by the plaintiffs after the right of action accrued, could not operate to defeat the action.

The plaintiffs could transfer no better or different claim than they themselves had, and the assignees would take it subject to all the legal or equitable defences against it.

Goldsborough, Adm'r, *vs.* Cradie, *et al.*

But if the claim were a valid one, the fact of its being transferred to other parties, who had instituted suit in their names, would not defeat the action, nor affect the defences of the defendant against them, or their assignees, who occupied no better position than they did at the time of the assignment.

It is in the power of the Court below to direct prayers, offered by one party and which had been granted or conceded, to be afterwards withdrawn at the instance of the opposite party.

In the trial of the cause below, the Court is required to exercise a sound discretion within the rules of law.

It is the right and duty of the Court, when called upon for the purpose, to instruct the jury upon any prayers presented before the case is closed.

APPEAL from the Circuit Court for Talbot County.

This was an action of *assumpsit* brought by the appellees against the appellant, administrator of Nichs. Goldsborough, in the Circuit Court for Talbot county, in November, 1858; alleging in the *first* count, that the defendant was indebted to the plaintiffs in the sum of $600, for the "*apprehension* and *securing*" three negro men, slaves of the defendant, who had absconded, &c.; in the *second* count, for money due plaintiffs for services rendered in "*taking, securing and returning*" three negro slaves, &c.; in the *third* count, for money due the plaintiffs by defendant, for work and labor in the "*taking, securing and returning*," three negroes, &c. The defendant pleaded that he never was indebted as alleged, and issue was joined thereon.

On Saturday night, the 21st of August, 1858, five of the negroes of the defendant's intestate ran away; on Monday following, (the 23d,) the defendant had advertisements printed offering a reward, which in the afternoon of Monday were sent from Easton for distribution. Before the advertisements were circulated, the negroes came into the town of Felton, in Delaware, on the Baltimore and Philadelphia Rail Road, stated they had run away from their master, and wanted to get tickets in the stage to take them home. The plaintiffs, Cradie and Davis, and a person named Palmer, took some

of the negroes about the town and locked them up in a room in the hotel, gave them their dinner, &c., but afterwards, there being some excitement, gave over the negroes to the constable Clymer, one of the plaintiffs, who said he would take them to Easton. While this state of things existed, no one having charge of the negroes, they being at large, Mr. Cheezum, a friend of the defendant, came in the train and seeing the negroes whom he well knew, and hearing from them that they had run away and wanted to return to their master, he paid their passage, and re-paid the sums the plaintiffs had paid for the negroes at Felton, and took the negroes in the stage with him; Mr. Cheezum telling the constable at Felton, and the driver of the stage, (Cradie,) another of the plaintiffs, that he had no doubt the defendant would pay them for their trouble. This driver drove the stage which took Cheezum and the negroes to Denton, whence they were driven by another driver to Easton; Mr. Cheezum being alone with the negroes and attending to their wants. Arriving at night in Easton, he put them in the jail, notified the defendant, and received from him all his expenses on account of the negroes.

At the trial in November, 1859, a verdict was given for the plaintiffs, and judgment rendered against the defendant *de bonis propriis.*

The defendant took six exceptions to the rulings of the Court; the *first exception* being taken to the refusal of the Court (CARMICHAEL, J.) to grant the following prayer:

2d Prayer. That if the jury believe from the evidence in this cause, that the three negroes mentioned in the declaration, were arrested at the house of Ratclidge, by Davis and Cradie, two of the plaintiffs, together with Laban Palmer, and by those three persons taken on the road toward Felton Station, until they were overtaken by the witness Herring, when they were, at the request of Davis and Cradie, taken by Herring to Felton Station, and that when they arrived at Felton Station, the negroes were locked up by Davis and Cradie, and that afterwards during the same morning, Davis and Cradie

delivered the said negroes to Clymer, one of the plaintiffs, directing him to bring them down to their owner, then the jury should find for the defendant.

*Second Exception:* The defendant offered the following prayers, each of which was refused by the Court, and the defendant excepted.

No. 3. That the jury should find for the defendant unless they believe from the evidence that Davis, Cradie and Clymer, the three persons who are plaintiffs in this cause, were originally concerned in arresting, securing and returning the negroes mentioned in the declaration.

No. 4. That if the jury shall believe, that Davis, Cradie and Laban Palmer, arrested the negroes mentioned in the declaration, and that Clymer was no party to the transaction until after the negroes arrived at Felton Station, and then became concerned by receiving the negroes from Davis and Cradie, for the purpose of bringing them to their master, they must find for the defendant.

No. 5. That if the jury shall believe from the evidence, that Palmer was at the time of the arrest of the negroes, interested in the transaction as a joint agent with the plaintiffs or any of them, then they should find for the defendant.

*Third Exception:* The defendant called P. J. Bath, a competent witness, by whom he proved that he resided, in August, 1858, at Felton Station, and kept a store there, that on a Monday morning late in August, being the day on which the three negroes of the defendant were brought to Felton Station, and shortly before they were brought there, he was standing in his store and saw a negro man whom he subsequently knew to be Allen, one of those three negroes, coming alone across the railroad at the distance of about 70 yards, that he came on directly to his store, that Cradie, one of the plaintiffs, was either in the store at the time when the negro man came into the store, or came in immediately thereafter, he was then asked if the negro stated for what purpose he came? But the plaintiffs by their counsel objected to his

answer; the defendant then stated that they proposed to prove by this witness, that the negro asked for a pass, to enable him to get to his master in Maryland; to this testimony the plaintiffs objected, and the Court sustained the objection, and refused to allow the proposed testimony to be given, to which ruling of the Court, the defendant excepted.

*Fourth Exception:* After certain additional evidence had been offered on both sides, the defendant's counsel asked the Court to give the following instructions to the jury:

No. 1. That if they believe that Clymer, one of the plaintiffs, prior to the institution of this suit was satisfied for his claim, and received twenty dollars in full payment therefor and assigned the same, then this action cannot be maintained.

No. 2. That if before this suit was instituted, Cradie, one of the plaintiffs, transferred to Clymer all the right and interest he had in the negroes, or any compensation for arresting them, and that the said Cradie delivered said negroes to Clymer before they left Felton Station, and had no agency directly or indirectly thereafter in securing or delivering them, then this action cannot be sustained.

No. 3. That if they believe that before this suit was instituted, Cradie and Clymer, two of the plaintiffs, had parted with all their interest in the claim, for compensation, for arresting, securing and returning the negroes, or that either of said plaintiffs had thus parted with such interest, then this action cannot be sustained.

No. 4. That if they believe from the evidence that the three negroes named in the declaration, before they were taken possession of by the plaintiffs or any of them, were endeavoring to return to the defendant, having abandoned the idea of running away, then the plaintiffs are not entitled to recover the reward offered by the defendant.

No. 5. That the plaintiffs are not entitled to recover under the offer of reward made by the defendant, of which evidence has been offered, unless the jury are satisfied by evidence that the plaintiffs alone, by themselves or their agents, have ar-

rested and delivered in jail the negroes mentioned in the declaration, or some of them.

No. 6. That if they believe from the evidence, that Cradie and Davis, two of the plaintiffs, delivered the negroes in question to John W. Clymer, the other plaintiff, prior to the institution of this suit, to be taken by him on his own responsibility, and to be taken down at his expense, if any reward was to be had said Clymer to have it, and any loss he to meet it, then that this action cannot be maintained.

No. 7. That if they believe from the evidence in the cause, that Laban Palmer, was concerned in the arrest, securing and delivery of the negroes in question, together with the plaintiffs named, or any of them, they must find for the defendant.

No. 8. If the jury shall believe that J. W. Cheezum, did say to William Nabb, at Denton, that he, Cheezum, would guarantee the payment of the reward by the defendant, yet they are not at liberty to regard this as proof that Cheezum did make the offer, but only to regard it as affecting the testimony of Cheezum, in regard to matters deposed to by him.

And the Court gave the said instructions, except the instruction numbered 4, which was refused; and to this refusal the defendant excepted.

*Fifth Exception:* The plaintiff asked the following instructions:

No. 2. That if the jury believe from the evidence, that Laban Palmer assisted in the arrest of the negroes, but before they were received and delivered to the defendant, he abandoned all participation therein, he was not a proper party to this action.

No. 3. That if the jury believe from the evidence, that Cradie and Davis, two of the plaintiffs, arrested the said negroes, and afterwards called in John W. Clymer, who assisted in receiving and delivering said negroes to the defendant, then he is a proper party to this suit.

Goldsborough, Adm'r, *vs.* Cradie, *et al.*

No. 4. That if the jury believe from the evidence, that the plaintiffs participated alone in the arrest and securing of the negroes in controversy, and entrusted them to John W. Cheezum, to be delivered to the defendant, and the said Cheezum did deliver the said negroes to the said defendant, such delivery was the delivery of the plaintiffs.

No. 5. That the jury are not to regard the declarations of the plaintiffs, or other evidence as to the transfer or assignment of any interest the plaintiffs might have in the reward, after the delivery of the negroes.

To which the defendant objected, but the Court overruled the objection, and gave the instruction as prayed; to this ruling of the Court the defendant excepted.

*Sixth Exception:* The plaintiffs asked the Court to withdraw instructions, Nos. 1 and 3, in the fifth bill of exceptions, which had been given without objection to the jury, and now refuse to give the said instructions; the defendant by his counsel objected, but the Court did say to the jury, that they were not to regard the said instructions as given; to which ruling of the Court, the defendant excepted.

The cause was argued before BARTOL, C. J., STEWART, GRASON, ALVEY and ROBINSON, J.

*Alex. B. Hagner* and *Alexander Randall,* for the appellant.

*Henry M. Murray,* for the appellees.

[The arguments of counsel are omitted, as it may be fairly presumed that no case will ever again arise in this State, growing out of the arrest of a runaway slave.   Reporter.]

STEWART, J., delivered the opinion of this Court.

In the refusal of the Court below in this case, to allow the prayer of the defendant in the first exception, (designated in the record No. 2,) and the third prayer in the second exception, (designated No. 5,) referring to the non-joinder of Pal-

mer as one of the plaintiffs, there is no cause of reversal, because in the progress of the case, the defendant had the benefit of the propositions of law, embraced therein by the allowance of his seventh prayer in the 4th exception.   *Baltimore and Ohio R. R. vs. Reiley,* 14 *Md. Rep.,* 424.

In the second exception we concur with the ruling below in the rejection of the prayers of the defendant, Nos. 1 and 2, (designated in the record, Nos. 3 and 4.)  It was not necessary that all of the plaintiffs should have been originally concerned in arresting, securing and restoring the negroes to the owner; each one may have performed a part in the entire transaction, the whole of which, it was essential, should be proved, but it was not incumbent upon all of them to have acted at the same time.   In order to establish a valid claim for their services, they were required to prove that it was through their agency, the alleged apprehension and returning of the property were secured, but that might have been effected by each performing a part.   The right to demand the reward offered, could not be maintained until the negroes were apprehended and placed in jail, in conformity to the advertisement, or delivered to the owner or his agent, and any person who aided in accomplishing such result, might join in a suit to recover the same.   The second prayer in this exception (designated No. 4) is obnoxious to similar objection.   If the jury believed that Clymer participated in the securing and delivery of the negroes, although not in the arrest, he might properly be joined in the action.

We see no ground of reversal in the third exception.   The statement of the negroes were not evidence *per se,* and could only be introduced, if objected to, where they were a part of the *res gestœ,* but not as distinct and independent testimony, as proposed to be detailed by Bath, the defendant's witness. No testimony had been previously offered by the plaintiffs, of any declarations of the negroes, made at a time and place, in reference to which the witness, Bath, was required to testify. The testimony of the plaintiffs' witness, Ratclidge, related to a different time.

In the fourth exception, the fourth prayer of the defendant. ought to have been granted. Upon no fair and just princi-ple could the reward be claimed, unless at the time of their alleged apprehension, the negroes still continued absconding, and runaways from their owner. If there were no evidence that the plaintiffs had notice of the reward offered, or that they had *bona fide* apprehended the negroes, as still absconding and runaways, if such were the fact, what just or legal de-mand had they to the reward? If the negroes were returning. to their owner, of which the plaintiffs or either of them were apprized, we do not see upon what grounds of law or justice, or upon any theory of a contract, express or implied, the re-ward offered could be claimed by the plaintiffs under such circumstances. On the contrary, if the plaintiffs, or either of them, having learned that the negroes were in the act of returning home to their owner, and would do so of their own motion, or with any one offering to take them, designed to avail themselves of such opportunity to arrest them, and to prevent, hinder and intercept their voluntary return home, with a view to their own gain, at the expense of the owner, such conduct and combination, so far from entitling them to a reward, would furnish evidence of a conspiracy to injure and defraud the owner of the negroes. 1 *Sanders' Pl. and Ev.*, 137 to 142; *Wall vs. Proctor*, 3 *Ky.*, Metcalf, 447; *Low-ning vs. City of Boston*, 7 *Mass.*, Metcalf, 409.

In the fifth exception we see no ground of reversal in Nos. 1, 2, and 3 prayers of the plaintiff, (designated Nos. 2, 3, and 4,) but the 4th prayer (designated No. 5,) ought not to have been granted. Although the legal proposition, involved in this prayer, according to the construction we put upon it, that an assignment or transfer by the plaintiffs, after their right of action had accrued, if such were the fact, could not operate to defeat the action, and any evidence introduced for such pur-pose should not be regarded, yet the prayer was too general, and indefinite, and might mislead the jury and exclude from their consideration, testimony that ought to have been re-

Goldsborough, Adm'r, *vs.* Cradle, *et al.*

garded by them. The services alleged to have been rendered in the apprehension and delivery of the negroes, and the claim for compensation, were subjects of enquiry before the jury. Any competent evidence or declarations of the plaintiffs, or any of them, in reference thereto, before or after the alleged delivery of the negroes, or in regard to the transfer or assignment of any interest they may have had in the reward, tending to prove their own estimate of the service, or that they had no just claim, or had abandoned any demand they may have had, might be given in evidence for such purpose. *Story on Contracts, sec.* 443.

The plaintiffs could transfer no better or different claim than they themselves had, and their assignees would take it, subject to all the legal or equitable defences against it. But if the claim were a valid one, the fact of its being transferred to other parties, who had instituted suit in their names, would not defeat the action, nor affect the defence of the defendant against them or their assignees, who occupied no better position than they did at the time of the assignment. *Act of* 1829, *ch.* 51.

In the sixth exception, where the Court below directed the defendant's prayers Nos. 1 and 3, in the 4th exception, which had been granted, or conceded, to be afterwards withdrawn at the instance of the plaintiffs, we see no sufficient reason for reversal. In the trial of the cause below, the Court is required to exercise a sound discretion within the rules of law. It was the right and duty of the Court, when called on for the purpose, to instruct the jury upon any prayers presented before the case was closed, and if no injustice has been done to any party by its action in the trial, there is no occasion for us to reverse its ruling in this particular.

*Judgment reversed and*
*procedendo awarded.*

(Decided 20th March, 1868.)

BARTOL, C. J., dissented.