# JOHN M. FUNK's Lessee, *vs.* CATHARINE KINCAID and HANNAH MURDOCK.

Where a defendant in ejectment came into possession of the premises as tenant of a party who subsequently conveyed the reversion to the plaintiff, he can make no defence which denies that *his lessor* had a right to make the lease under which he entered into possession.

But if the deed conveying the reversion be defectively executed, or the original lessor, subsequent to the lease, make two conveyances of the reversion to different parties, the title under the second conveyance, or that under the defectively executed deed, may be disputed by the tenant.

A defendant in ejectment, the tenant of a married woman, who, with her reputed husband, subsequently conveyed the reversion to the plaintiff, cannot show that prior to the lease the landlady was legally married to another husband, who is still living, because the effect of this would be to establish that at the date of the lease the landlady had no authority to make it.

By the conveyance of the reversion the relation of landlord and tenant is created between the grantee and the lessee of the grantor, and since the statute of 4 *Anne, ch.* 16, *sec.* 4, no attornment by the tenant is necessary, and the doctrine of estoppel operates in favor of the grantee, to the same extent it would in favor of the original landlord.

Where two are defendants in ejectment and but one has admitted the tenancy, a prayer which assumes that both were estopped from denying the plaintiff's title, without leaving to the jury to find that the other came into possession of part of the premises under the former, is erroneous, for the court cannot assume this fact, no matter how full and ample the proof may be.

Prayers which assert that the doctrine of estoppel prevents the defendant, who was the tenant of the grantor of the reversion, from denying the title of the plaintiff, the grantee of the reversion, without leaving to the jury to find in what manner the plaintiff derived his title, are erroneous.

In *collateral matters* where neither the husband nor wife is directly interested in the event of a civil action, or directly chargeable in a criminal proceeding, the testimony of either is admissible, though it may tend to criminate the other, or to render him or her responsible for a legal claim.

In an action of ejectment, where the plaintiff claimed under a conveyance of the reversion from husband and wife, the former husband is not incompetent to prove for the defendant, the tenant of the wife, an alleged *former marriage* of the wife simply because he was her husband, nor does his testimony so directly and materially promote his own interest as to render him incompetent on the ground of interest.

A witness is incompetent on the ground of interest only where he has a legal, certain and immediate interest in the event of the suit itself, or in the record, as an instrument of evidence in support of his own claims in a subsequent action.

In an ejectment the plaintiff claimed under a conveyance from husband and wife, and insisted that the defendants were the tenants of the wife, and therefore estopped from disputing his title, but the tenancy was denied, and the defendants offered to prove by the former husband of the wife her alleged former marriage, and the court admitted this evidence. HELD:

1st. That this evidence was admissible if there was no tenancy, and by admitting it without qualification the court decided there was none, which they had no right to do, it being a question of fact for the jury, there being testimony to show there was a tenancy.

2nd. If the proof rendered the question of tenancy or no tenancy a doubtful one in the opinion of the court, they might have admitted it, instructing the jury that if they believed there was a tenancy, then the testimony was not properly before them.

When the preliminary proof is *clear and uncontradicted*, the court will decide the question of admissibility, but if doubtful, it is proper to submit the matter to the jury and let them decide the doubt, when such doubt depends upon a question of fact.

APPEAL from Baltimore county court.

*Ejectment* by the appellant against the appellees, for a certain lot of ground in the city of Baltimore. Plea, *non cul.*

*Exception.* The plaintiff in support of his title offered:— 1st, a deed of the lot, dated 5th of February 1800, from John Miller to Rebecca Mordecai, daughter of Isaac Mordecai. 2nd, a deed of the same lot, dated the 14th of February 1846, from John E. Hinchman, and Rebecca Hinchman, his wife, to Funk, the lessor of the plaintiff. He also proved, that the said Rebecca, named in the first deed, and the said Hinchman, lived together as man and wife in 1834, 1835 and 1836; that in 1835 or 1836, Mrs. Hinchman said, in presence of Mrs. Kincaid, one of the defendants, she had rented the property at $3 per month to Mrs. Kincaid, to which the latter said, "Yes, she was going to try it," and the next day witness saw Mrs. Kincaid in possession of the property, where she has remained ever since; that in 1844 or 1845, Mrs. Murdock, the other defendant, said she had been on the premises, in the back part of the house, for nine years, and that the property belonged to Mrs. Hinchman, and that she, Mrs. Murdock, was willing to go out.

The defendants then gave in evidence a deed for the

Funk's Lessee *vs.* Kincaid and Murdock.

property, dated 20th of October 1820, from John Scott, trustee in insolvency of Rebecca Mordecai, and said Rebecca, to one West. They then offered to prove by Solomon Harris, that he had been married to said Rebecca, in Philadelphia, in the year 1834. To the admissibility of this evidence, and to the competency of said Harris, the plaintiff excepted, but the court overruled the objection and permitted the evidence to go to the jury. They also proved further by another witness the marriage of said Harris with the said Rebecca, and also by a third witness, that she had lived with Harris, as his wife, in Philadelphia, before she bore the name of Hinchman.

The plaintiff then offered two prayers, which are fully stated in the opinion of this court, which the court below, (LE GRAND, A. J.,) rejected. To this rejection, as well as to the ruling of the court in admitting the testimony of Harris, as aforesaid, the plaintiff excepted, and the verdict and judgment being in favor of the defendants he appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*T. Yates Walsh* and *Grafton L. Dulany* for the appellant.

1st. The evidence of Harris was inadmissible:—1st, because, if in point of fact he was the husband of Rebecca, that relation rendered him incompetent as a witness to prove the alleged guilt of his wife under any circumstances. 3 *Cowen's Philips on Ev.*, 147, *note* 142. 2nd, because he was proving his own case; he had a direct interest on the side on which he was summoned, for the attempt is to set up a title in him to defeat the plaintiff. Suppose there had been a verdict for the defendants upon this defence, and Harris had afterwards brought ejectment against them, would not their solemn admissions of record estop them from denying his title? 3rd, because of the principle of estoppel between landlord and tenant. The title of the landlord rests upon no deed, but simply upon the fact of giving and taking possession, and the tenant cannot dispute this title directly, nor can he by any

allegations of fact do it indirectly. Mr. and Mrs. Hinchman were living in Baltimore as man and wife in 1835 or 1836, and they then leased this property to the defendants. Now it is immaterial whether she was Mrs. Hinchman or Mrs. Harris, for Mrs. Kincaid *received* the property, and thereby admitted every *fact* necessary to establish the title of the person from whom she received it. In receiving the property from Mrs. Hinchman, Mrs. Kincaid admitted she was the wife of Hinchman, and she is estopped from showing that she was Mrs. Harris, for to do so would be in effect an attempt to impeach the title of her *landlady.*

2nd. Our prayers assert the doctrine of *estoppel* between landlord and tenant, and should have been granted. It is admitted that where a party takes possession of property as tenant, that fact by implication admits the title of the landlord, and the tenant is not permitted to deny it. The doctrine of estoppel in such cases is founded upon the highest considerations of good faith. If, therefore, Hinchman and wife had brought the suit, Mrs. Kincaid could not have denied their title. Neither can she as against Funk, because the latter's deed is subsequent to the lease to her. She cannot deny the title of the parties from whom she received the property. The doctrine of estoppel extends to the prevention of the party from asserting any fact, however true it may be, which tends to deny the title of the landlord. 5 *Cowen,* 129, *Jackson vs. Davis.* 4 *Johns.,* 230, *Jackson vs. Bard.* 3 *Johns.,* 504, *Jackson vs. Scissam.* 2 *Caine's Rep.,* 216, *Jackson vs. Whitford.*

*William Schley* for the appellees.

1st. The prayers assert that *both* defendants are estopped from denying the title of the landlord, whereas but one of them has admitted the tenancy. But again they assert that the estoppel extends to the lessor of the plaintiff, who is the alienee of the landlady. This cannot be done. We can show the lessor of the plaintiff has no title as derived from the landlady. Again, the prayers go too far, for they tell the

jury there was no evidence of an outstanding title in a third party, whereas there was such evidence by the deed to *West.*

2nd. The evidence of Harris was admissible. He had no interest in the suit. The rule which excludes the evidence of the husband where the wife is interested has no application to such a case as this. A husband and wife are distinct persons, and are competent witnesses in all cases where the one or the other is not a party, or has no direct interest in the result of, the suit. 1 *Cowen's Philips on Ev.,* 79. 3 *Do.,* 148, *note* 144. 22 *Eng. C. L. Rep.,* 152, *King vs. Inhabitants of Bathwick.* 1 *Greenlf. on Ev., sec.* 342. Moreover the evidence of Harris was merely cumulative and the fact of his marriage was proved by other witnesses.

ECCLESTON, J., delivered the opinion of this court.

The bill of exceptions presents questions arising upon two prayers asked by the plaintiff, and upon objections made by him to the admissibility of the testimony of Harris and Heighe, two witnesses on the part of the defendants. But the objection to the testimony of Heighe has been waived; and we will proceed, first, to consider the questions presented by the prayers.

They both assert the principle, that in an ejectment suit the defendant is estopped from denying the title of the lessor of the plaintiff, where the defendant came into possession of the premises as tenant of a party who has conveyed the reversion to the lessor of the plaintiff. The counsel for the appellees concedes, that as between lessor and lessee the latter cannot deny the title of the former, but he insists that the doctrine of estoppel does not prevent a tenant from disputing the validity of a title which the lessor has attempted to convey, or transfer, to another party, who has instituted an action to recover possession of the premises from the tenant. To a certain extent the appellees' counsel is correct. For if the deed or instrument intended to convey the reversion should be defectively executed, or in case the original lessor, subsequent to the lease, should convey all his right in the estate, and then execute a second conveyance for the same, in favor of another person; the title claimed under the second conveyance, or that under

the supposed defectively executed instrument, might be disputed by the tenant. But he can make no defence in ejectment which denies that his lessor had a right to make the lease, under which he entered into possession. The title of the lessor, as of the date of the lease, is in fact the title of the lessee. The former cannot be impugned without disparaging the latter. And if the tenant attempts to set up any other title as existing at the date of the lease, he will be violating the contract by which he obtained possession. This subject is discussed very fully in *Willison vs. Watkins*, 3 *Peters' Rep.*, 43, and on page 47 the court say: "It is an undoubted principle of law, fully recognized by this court, that a tenant cannot dispute the title of his landlord, either by setting up a title in himself or a third person, during the existence of the lease or tenancy. The principle of estoppel applies to the relation between them, and operates in its full force to prevent the tenant from violating that contract by which he obtained and holds possession." See also 5 *Cowen*, 129. 2 *Caine's Rep.*, 216. 7 *Wheat.*, 548, 549. 5 *Eng. C. L. Rep.*, 4. 29 *Ibid.*, 16, and 25 *Ibid.*, 239.

In *Doe on Dem., Higginbotham vs. Barton*, 11 *Adol. & Ellis*, 307, in 39 *Eng. C. L. Rep.*, 99, the rule is said to be fully established, "that the tenant cannot deny that the person by whom he was let into possession had title at that time, but he may show that such title is determined."

Here the effort is not made to prove the termination of Mrs. Hinchman's estate or title subsequent to the lease, but to show that prior to it she had been legally married to Harris, who was still living. The effect of which proof, if admissible, would be to establish, that at the date of the lease she had no authority to make it. Now as it is manifest from the authorities a tenant cannot resort to such proof for such a purpose, it would seem, necessarily, to follow, that the same proof could not be used in defence to show a want of authority in Mrs. Hinchman to convey her title to the lessor of the plaintiff. The doctrine of estoppel, as between lessor and lessee, would avail nothing in ejectment if the inability of the latter to impeach the title does not apply between her and the party

claiming under the former, for if it does not, then, even the lease to the fictitious plaintiff might be assailed. It is certainly true, as a general rule, that a party cannot maintain an ejectment who cannot make a valid lease. The proof in regard to the marriage between Harris and Mrs. Hinchman is, that it took place before she rented the property to Mrs. Kincaid. To say that the conveyance to Funk by Mrs. Hinchman and J. E. Hinchman, as husband and wife, made since the lease from her, is a nullity, because she is not the wife of Hinchman but of Harris, is a direct denial of the title received by Mrs. Kincaid under the lease. For if she had no right to make the one she had none to make the other conveyance, and for the same reason.

There is evidence tending to prove that Mrs. Kincaid was the tenant of Mrs. Hinchman prior to the deed from Mr. and Mrs. Hinchman, and it does not appear that the tenancy of Mrs. Kincaid had ceased to exist when this deed was made. If, therefore, she held under the lease when the deed was made, she could not deny the right of Mrs. Hinchman to make the conveyance, and by that instrument the relation of landlord and tenant was established between the grantee in the deed and Mrs. Kincaid. That this is the necessary consequence of the conveyance may be seen by reference to *Archb. Law of Landlord and Tenant*, 69, 70, in 53 *Law Lib.*, 86. And since the statute of 4 *Anne*, *ch.* 16, *sec.* 9, no attornment by the tenant is necessary. See 20 *Eng. Law & Eq. Rep.*, 94.

In *Willison vs. Watkins*, the father of the defendant below was the tenant of Bordeaux in 1792. Under a sheriff's sale in 1803, the plaintiff below purchased the title of Bordeaux, and in the suit, claimed to stand in the relation of landlord to the defendant, who was the son of the original tenant. Limitations was the defence relied upon. And although the proof clearly established an adverse holding for a much longer time than the statute of South Carolina required, yet the plaintiff succeeded below; the judge having instructed the jury, that when the proof showed a tenancy had once existed, the tenancy must not only be abandoned, but possession given up, before an adverse possession could be alleged. This decision

was reversed by the Supreme Court, upon the ground, that although a party may be a tenant, the landlord's title may be defeated by limitation, if, after having knowledge of an adverse claim, he permits the adverse holding to continue for the period required by the statute without suit; notwithstanding possession had not been given up before the commencement of the adverse claim. But there is no expression or even an intimation of a doubt, that the doctrine of estoppel would operate in favor of an assignee or grantee of the reversion to the same extent it would in favor of the original landlord.

By the first prayer the court were asked to instruct the jury, that "if from the evidence they should find the property in dispute was rented to Mrs. Kincaid, in the manner stated in the proof, and under that renting she entered and took possession of the whole property, for which this action was instituted, *then the said defendants* are estopped from setting up any outstanding title in *said defendants*, or any other person adverse to that of the plaintiff." It is here assumed that both defendants were prevented from denying the plaintiff's title; provided, the jury should believe the property was rented to Mrs. Kincaid, and that she took possession under the lease; without submitting to the jury any inquiry as to how or in what manner Mrs. Murdock became possessed of part of the premises. Supposing that in regard to Mrs. Kincaid the prayer may be correct, still the court could not say that the facts stated, if believed by the jury, would estop Mrs. Murdoch from disputing the title of the plaintiff, because it would be assuming that she did not come into possession in any other way than under Mrs. Kincaid, without leaving the jury to find whether such was the case. And this the court could not do, no matter how full and ample the proof to justify such an inference or conclusion.

The second prayer is, that "if the jury believed Mrs. Hinchman was in peaceable and quiet possession of the property in dispute, and so continued from the year 1820 until it was rented by her to the defendant, Mrs. Kincaid, who accepted the same, and entered and took possession of it as the tenant of Mrs. Hinchman, and that Mrs. Kincaid remained in

possession under her original entry, then it is not competent for *said defendant* to set up a title in herself, or in any third party, to defeat, nor is there any evidence in this case, in point of fact, to show any such title in said defendant or any third party, as can bar the right of recovery of the lessor of the plaintiff."

There are two propositions presented in this prayer. The first is, that if the jury ascertain the facts submitted for their consideration to be true, then Mrs. Kincaid could not set up title in herself or any one else, to defeat the claim of the plaintiff. The second is, that if those facts are believed by the jury, then, in point of fact, there is no evidence of title in Mrs. Kincaid, or any other person, which can legally bar the right of the plaintiff. In other words, the meaning of the instruction, as we understand it, is, that if the relation of landlady and tenant existed, between Mrs. Hinchman and Mrs. Kincaid, the latter could not impeach the title of the lessor of the plaintiff, by proving title adverse to his. And that in fact there is no proof of any adverse title, which the law will permit to be used as a bar to this action; provided the jury believed the facts stated in the beginning of the prayer.

The doctrine of estoppel as relied upon in the first part of this prayer is clearly confined to Mrs. Kincaid alone; but the same cannot be said of the latter clause. When it says, "nor is there any evidence in this case, in point of fact, to show any such title in said defendant, or any third party, as can bar the right of recovery;" &c., it denies not only to Mrs. Kincaid, but to Mrs. Murdoch also, the authority to set up the title of a third party in opposition to the plaintiff's claim. And, therefore, the reasons assigned for affirming the rejection of the first prayer apply with equal force in bringing us to the conclusion that the court below were right in refusing the second also.

But admitting the reasons already assigned may not be sufficient to justify or sustain the rejection of the prayers, still they ought not to have been granted, because they ask the court to instruct the jury that if they believe Mrs. Kincaid was the tenant of Mrs. Hinchman, then the doctrine of estoppel prevents a denial of the title of the lessor of the plaintiff;

without requiring that the jury shall find any conveyance or transfer of title to him by Mrs. Hinchman, or in what manner he acquired any title. It is true the deed to him is in evidence, but the prayers make no allusion to it. And the court could not assume the existence of the deed, no matter how clear the proof on that subject. Although the jury may have believed there was a lease from Mrs. Hinchman to Mrs. Kincaid, and that she took and held possession under it, yet she was not estopped from disputing Funk's title or setting up another in opposition to it, unless he had obtained the title of Mrs. Hinchman. And if he had, it was necessary for the jury to find it to be so, before he was entitled to an application of the law of estoppel in his favor, on account of the relation of landlord and tenant. Both prayers are evidently based upon this kind of estoppel, and neither of them having submitted to the jury any question as to how the lessor of the plaintiff claimed or acquired title, they were defective in that respect, and consequently the court committed no error in refusing to grant them.

The decision below under which Harris was permitted to testify in regard to the marriage between himself and Mrs. Hinchman has been objected to on several grounds. In the first place it is said the relation of husband and wife rendered him incompetent; and that whether a wife is or is not a party to the suit, if there is evidence in regard to her being a married woman, and an effort is made to prove a former marriage, the alleged former husband is not a competent witness to sustain the allegation; because he would be proving the guilty conduct of his own wife, if permitted to testify. This view is sustained by the case of *Rex vs. Cliviger*, 2 *Term Rep.*, 263, where it was held that a wife could not in any case give evidence, even *tending* to criminate her husband. But the authority of that decision was very much shaken by *Rex vs. All Saints*, 6 *Maule & Selw.*, 194, where Lord Ellenborough thought the rule in *Rex vs. Cliviger* had been laid down "somewhat too largely." Both those cases are referred to in *Rex vs. Bathwick*, 2 *B. & Ald.*, 639, in 22 *Eng.*, *C. L. Rep.*, 152. There, upon a question of settlement, the husband was called,

who proved his marriage with the pauper. Subsequently it was proposed to prove by another woman that she had been previously married to the male witness, and although objected to, her testimony was received. The rule in *Rex vs. Cliviger*, was admitted to be true, "in the case of a direct charge and proceeding" against a husband for any offence, but its application to collateral matters was denied. The court admit that if the testimony given by both witnesses should be considered as true, then the husband had been guilty of bigamy; but as nothing the wife said, or any decision of the court founded upon her testimony could be received in evidence to support an indictment against him for that offence, the wife was decided to be a competent witness.

In *Griffin vs. Brown*, 2 *Pick.*, 308, C. J. Parker considers the cases to which he refers as establishing the principle, that a wife may be admitted as a witness, to excuse a party from a supposed liability, for which he is sued, although her testimony may be calculated to charge her husband upon the same claim, in a subsequent action against him. And the reason assigned is, that the verdict in the first action cannot be used as evidence in the second; so that notwithstanding her testimony might show her husband's liability, yet he could not be prejudiced by it. On this subject Mr. Greenleaf in his *Treatise on Evidence*, *vol.* 1, *sec.* 342, says, "but though the husband and wife are not admissible as witnesses against each other, where either *is directly interested in the event of the proceeding*, whether civil or criminal; yet, in *collateral proceedings*, not immediately affecting their mutual interests, their evidence is receivable, notwithstanding it may *tend to criminate*, or may contradict the other, or may subject the other to a legal demand." If therefore the concurring opinions of Lord Ellenborough, Lord Tenterden, C. J. Parker and Mr. Greenleaf, may be taken as establishing the correctness of a legal proposition, it must be considered as a well settled general rule, that *in collateral matters*, where the husband is not directly interested in the event of a civil action, or directly charged in a criminal proceeding, the testimony of the wife may be admitted, although it may tend to criminate him, or to render

him responsible for a legal claim. And, of course, under similar circumstances, the husband will be allowed to testify in regard to *collateral matters* affecting the wife. Consequently, Harris was not incompetent to prove the alleged former marriage of Mrs. Hinchman simply because he was her husband.

The testimony of Harris is also objected to because it must necessarily tend to advance his own interest; the object being to prove the former marriage of Mrs. Hinchman, and consequently to establish her incapacity to execute the deed purporting to convey title to the lessor of the plaintiff. If it can be shown that he has no title, the defendants must have a verdict in their favor. Should that be the result, and Harris, as the legitimate husband of Mrs. Hinchman, should institute a suit to recover possession of the premises, it is supposed the testimony given by him in this suit, at the instance of the defendants, would be admissible evidence for him in support of his own claim to a verdict. And although in the subsequent action the verdict in this could not be given in evidence by him, yet the testimony proposed to be given by him, and which was admitted, is calculated to produce a result in which he has a direct interest. But if his right to recover is based upon the first marriage, we do not perceive how he would have a better chance of success against the present defendants than against the lessor of the plaintiff. The latter claims under a deed from Mr. and Mrs. Hinchman, as husband and wife, and if the former marriage is once established his title is gone. Whilst it will be seen that the defendants do not profess to claim under Mrs. Hinchman, but make every effort to deny the title which the plaintiff claims under her. They resist the attempt on the part of the plaintiff to establish the relation of landlord and tenant, for the purpose of introducing the doctrine of estoppel in his favor. And even conceding that proof offered in this suit by the defendants could be used against them in a subsequent one by Harris, yet if the lease from Mrs. Hinchman to Mrs. Kincaid should there be proved by the witness here relied upon for that purpose, so soon as Harris introduces his present testimony to establish the former

marriage that must put an end to the lease, because it will show there was no authority or right in Mrs. Hinchman to make it. And if Harris, as plaintiff, should show that the relation of landlord and tenant did not exist, the defendants would not be prevented by estoppel from denying his title, or setting up one in themselves or any third party.

Again, if the present testimony of Harris could be used by him in a future suit against the defendants, it could not possibly have any more beneficial effect in his favor than would the simple offer of the defendants to prove the marriage by him. That offer as clearly established their admission of, and reliance upon, the marriage, as his statement of the matter under oath could, because the testimony, if admissible at all, could only be so as their admission. We therefore do not see how his testimony can so directly and so materially promote his own interest as to render Harris an incompetent witness on the ground of interest. In *Crawford vs. Brooke,* 4 *Gill,* 218, whilst considering the question whether a witness alleged to be interested was properly permitted to testify, the court say: "It is now established, that the only cases in which, for this cause, a witness is incompetent, are, where he has a legal, certain and immediate interest in the event of the suit itself, or in the record, as an instrument of evidence in support of his own claims in a subsequent action." It cannot be said that the present record could be used as an instrument of evidence for Harris in a future suit; and we do not think he comes within the other branch of the rule just stated.

A third objection to the propriety of receiving the testimony of Harris has been urged in argument. This is the principle of estoppel as between landlord and tenant. It is contended that proof of the former marriage cannot be given, because the very object of it is to show Mrs. Hinchman had no right to make the conveyance to Funk, and consequently none to make the lease to Mrs. Kincaid.

In ejectment the title of the plaintiff, as a general rule, is always in issue, and any testimony impeaching that title is relevant and proper, if not inconsistent with some other principle of evidence. An exception to this rule is, that a tenant

cannot deny the landlord's title. But, of course, before the exception can avail any thing, the relation of landlord and tenant, if not admitted, must be established by legitimate proof. Here proof of the former marriage was proper if no lease had been made. Whether there was one or not was a disputed matter, and constituted a very important and material issue in the cause, the plaintiff asserting the affirmative and the defendants the negative. Admitting the testimony virtually decided there was no lease; and thus, in settling a preliminary question in regard to the admissibility of evidence, by receiving the testimony without any qualification or hypothetical instruction to the jury, the court decided an important question of fact, depending entirely upon parol proof proper for the consideration of the jury in the formation of their verdict. The record shows there was testimony tending to prove the existence of a lease, but whether it was sufficient to satisfy a jury of that fact it is not necessary for us to say, whatever may be our opinion on that subject. The circumstances, however, justify us in saying, and the position of the case requires us to decide, that the proof is not such as could authorize the court below to assume there was no lease, and on that assumption to admit the testimony of Harris without any restriction or qualification. In our opinion an unqualified rejection of the evidence, rather than an unqualified admission of it, would have been more consistent with the state of the proof in the cause. It certainly cannot be said with propriety, that the testimony proves clearly and satisfactorily the non-existence of the alleged lease. We have said Harris' testimony was inadmissible except upon the hypothesis that no lease had been made. If the proof, in the estimation of the court, rendered the question of lease or no lease a doubtful one, they might have permitted the offered testimony to have been given, instructing the jury that if they believed Mrs. Kincaid rented and received possession of the premises from Mrs. Hinchman, who afterwards conveyed her title to the lessor of the plaintiff, and that Mrs. Murdock received part of the property under Mrs. Kincaid, then the testimony of Harris in regard to the former marriage was not properly before them, otherwise it was.

53    v.5

In *Trasher vs. Everhart*, 3 *G. & J.*, 242, it was decided, that proof necessary to establish the admissibility of evidence which the party wishes to give should first be addressed to the court, and when *clear and uncontradicted*, they will decide and admit the evidence. In that case it was supposed necessary to prove what the laws of Virginia were, for the purpose of showing by those laws that the instrument of writing offered in evidence was a promissory note, and as such should be allowed to go to the jury. The court held, that when it is doubtful as to what the foreign law is, "the court may decline deciding it, and may inform the jury that if they believe the foreign law attempted to be proved exists, as alleged, then they ought to receive the instrument in evidence; on the contrary, if they should believe that such is not the foreign law, they should reject the instrument as evidence." And the same case treats of the proper mode of proceeding when a deed is offered in evidence. In the first instance, proof of its execution is to be addressed to the court, and upon such proof they determine whether the deed is admissible or not, unless the evidence of its execution is doubtful, in which case it is said: "The court *will* let the deed go to the jury with the evidence offered of its execution, informing them that they are to receive it in evidence if they shall believe it to have been executed, but if they should believe it was not executed they must reject it; or in other words, not consider it as evidence in the cause." See also *Dement's Adm'rs vs. Stonestreet's Adm'r*, 1 *Md. Rep.*, 123.

According to the case of *Trasher vs. Everhart*, when the preliminary proof "*is clear and uncontradicted*," the court will decide the question of admissibility, but if doubtful, it is proper to submit the matter to the jury and let them decide the doubt, when such doubt depends upon a question of fact. We do not mean to say that every slight degree of doubt created by preliminary proof, or other proof in the cause upon which the question of admissibility may depend, will require the court to decline deciding that question and leave the doubt to be settled by the jury. But in a case like the one before us, it would be intruding too far upon the rights of the jury

were we to sustain the decision below. By admitting the testimony without any instruction on the subject, in effect, the court decided there was no lease; and this was calculated to mislead the jury, by inducing them to believe either that the court thought the alleged lease had no existence, or that it could not legally have any influence in favor of the plaintiff.

Other testimony than that of Harris was given for the purpose of proving the former marriage, but not having been excepted to, it is not before us.

We think the court were right in refusing both prayers for the reasons stated, but in our opinion they committed an error by admitting the testimony of Harris without giving the jury any instruction on the subject, and consequently the judgment must be reversed.

*Judgment reversed and procedendo awarded.*