# MARYLAND REPORTS.

## OCTOBER TERM, A. D., 1874.

HOWARD SPENCER, and others, trading as "THE DEER CREEK IRON WORKS," *vs.* THOMAS TRAFFORD.

*Demurrer not sustained where narr. contains one good count— Where the time when the Cause of Action arose need not be stated in the narr.—Effect of claim of Damages at end of the narr.— Competency of a Witness under Act of 1868, ch. 116, where contract made with an Agent who has died—Question of Competency of Witness may be referred to the Jury—Rule, " Security for Costs"—Evidence however slight to be weighed by the jury— How a question of Variance must be presented in a Prayer—A prayer bad which asks the Exclusion of the entire testimony of a witness where a part is admissible—Agreement and Acceptance implied from Rendition of services—Power of Court to reject Prayers—Right of Court to have narr. brought from jury room and blanks filled.*

If there is one good count in a declaration a demurrer to the whole declaration will not be sustained. ( *Code, Art.* 75, *sec.* 8.)

A count in a *narr.* set out a contract for a year's service to be rendered by the plaintiff to the defendant, to commence April 1, 1869, and went on to aver that the plaintiff labored faithfully for the defendant from said 1st day of April, 1869, to the —— day of ——, 1870, until he was discharged without cause, and that the plaintiff was willing and offered to perform all the ser-

1               v. 42.

vice for the entire year. There was no averment that the plaintiff was not paid, and the *narr.* ended with a claim of $2000. On demurrer it was HELD:

1st. That the precise day or month of the year when the plaintiff was discharged was not of the essence of his claim (*Code, Art.* 75, *sec.* 5,) and need not be averred.

2nd. That the claim for damages was a sufficient allegation that the plaintiff was not paid.

Where a firm through an agent enters into a contract, the person with whom the contract is made, on his suit against the firm for a breach of the contract, is a competent witness, although the agent be dead. (*Act of* 1868, *ch.* 116.)

A firm through its agent L. S. entered into a contract with T., who sued for a breach of the contract. At the trial T., the plaintiff, testified that L. S. was dead. Thereupon the defendant offered to prove by H. S. one of the defendants, that L. S. was a member of the firm and beneficially interested in the contract, for the purpose of impeaching T's competency as a witness, (*Act of* 1868, *ch.* 116.) The plaintiff objected on the ground that H. S. was not a competent witness. HELD:

That H. S was a competent witness to prove that L. S. was a member of the firm.

In civil cases where the question of the competency of a witness, is one of fact, the Court can refer the question to the jury.

At the trial of a cause, the defendants after the plaintiff had closed his testimony, discovered that the plaintiff had not complied with a rule "security for costs," and moved the Court to stop the trial until the rule was complied with. HELD:

That the motion came too late; it should have been made before going to the trial of the cause.

Any evidence, unless utterly inconclusive to a rational mind, however slight it may appear to the Court, must be weighed by the jury; and prayers, which, in such a case, proceed on the assumption, or assert, that there is no evidence, are properly rejected.

The *narr.* in a case contained the common counts in *assumpsit* and a count on a special contract for certain personal services. The plaintiff testified as to the existence and terms of the contract, and the services rendered under it, and as to other services not included in the contract. HELD:

1st. That a prayer that the plaintiff was not entitled to recover on account of a variance between the contract alleged in the *narr.* and that proven, was objectionable in making no discrimination, and in presenting no ground on which the Court could decide the question of variance.

2nd. That the testimony in reference to the services not included in the contract being admissible, a prayer asking the Court to exclude the plaintiff's entire evidence on a ground relating only to the testimony on the special contract, was properly rejected.

3rd. That if the plaintiff rendered services in addition to those contemplated in the special contract, the jury could infer an agreement, express or implied, to pay for them; and the fact of rendering services is *prima facie* evidence of their acceptance.

Where a prayer, unobjectionable in itself, is rejected and instructions are given, substantially embodying the same proposition of law, the rejection of the prayer is no ground for reversal.

After a jury had retired, it was discovered that the counsel of the plaintiff had neglected to fill up some blanks in the *narr.* for which permission had been granted. The Court, thereupon, sent the bailiff in charge of the jury, into the jury room and had the *narr.* brought out and the blanks filled up without sending for the defendants' counsel, and then returned it to the jury. The filling up of the blanks was not necessary for the legal sufficiency of the *narr.* HELD:

That the action of the Court was no ground for arresting the judgment.

APPEAL from the Circuit Court for Cecil County.

This suit was instituted in the Circuit Court for Harford County by the appellee against the appellants, to recover damages for discharging him from their employment without cause before the expiration of the term of service agreed on. The case was subsequently removed for trial to the Circuit Court for Cecil County. The declaration contained the common counts in *assumpsit* and the following special count:

6th. For that the defendants being the proprietors of a certain manufacturing company known as "The Deer Creek Iron Works," employed the said plaintiff to superintend and manage their said works, and the business

appertaining thereto, and to work and labor for them in and about their said business for one year, commencing on the first day of April, 1869, and for his services in the premises agreed to pay him, as a salary for said year, the sum of one thousand dollars. And plaintiff avers that he accepted said employment, and entered upon the performance of the services for which he was employed as aforesaid, and labored faithfully and diligently for defendants in the premises for a long space of time, to wit, from the said first day of April, 1869, to the [*tenth*] day of [*January*,] in the year 1870, and until he was discharged by the defendants, without cause.

And the plaintiff avers that he was ready and willing, and offered to perform all the services for which he was employed as aforesaid, during the whole of said year, commencing on the first day of April, 1869, but that he was prevented from so doing by said defendants. And the plaintiff claims the sum of two thousand dollars, and therefore brings this suit.

[*Note.*—The above words italicised, in brackets, indicate how the blanks hereinafter mentioned and referred to in the motion in arrest of judgment, and order of Court overruling the same were filled up.]

Two demurrers were filed—one to the entire *narr.* and one to the 6th count; both of which were overruled.

*First Exception*—The plaintiff, offered himself as a witness, and proved that on the ———day of April, 1868, he made a contract with a certain L. K. Saylor to enter the service of the company, doing business under the name of "The Deer Creek Iron Works," for a period of one year, commencing on the first of April, 1868. He further stated that Saylor was the superintendent and agent of the said company. The defendants thereupon asked the witness if L. K. Saylor was living or dead, and he replied, he is dead. The defendants then objected to the competency of the plaintiff as a witness in his own behalf, and asked the

Court to exclude his testimony from the jury, but the Court refused so to do.

To this ruling the defendants excepted.

*Second Exception.*—The plaintiff continuing his testimony, the defendants renewed their objection, and offered to prove by Howard Spencer, one of the defendants, that L. K. Saylor was a member of the company spoken of in the first exception, and a partner therein, and as such beneficially interested in the contract which the plaintiff had testified was made by Saylor, and which was sued upon in this cause, for the purpose of showing, in connection with the matters stated in the first exception, that the plaintiff was incompetent to testify as a witness on his own offer in this case; but the plaintiff objected, on the ground that Howard Spencer was an incompetent witness to prove those facts.

The Court sustained the objection and refused to permit said facts to be proven by said witness. The defendants excepted.

*Third Exception.*—This exception set out the testimony on behalf of the plaintiff tending to prove the contract and discharge from service referred to in the *narr.;* that the plaintiff had rendered various services other than those to which the contract related, and then proceeded as follows:

The plaintiff having closed his case, the defendants then stated to the Court that it had at that moment come to their knowledge, for the first time, that a rule security for costs laid upon the plaintiff (who was a non-resident,) had not been complied with; which being admitted by the plaintiff, the defendants asked the Court to stop the trial of the cause until that rule should be complied with; but the Court refused, and was of opinion that the defendants had waived their right to insist upon the rule by pleading to the merits. The defendants excepted.

*Fourth Exception.*—The defendants then called J. P. Lee, a competent witness, and proved by him, that he was

in the employment of the company doing business at the Deer Creek Iron Works, from a period prior to the first of April, 1868, and is still in their employment at the Deer Creek Iron Works. He testified that the company doing business at the Deer Creek Iron Works was composed of Howard Spencer, L. K. Saylor, and Seyfert, McManus & Co.—and gave other testimony tending to show that Saylor was a partner in the Deer Creek Iron Works. The witness also proved that L. K. Saylor was dead. The plaintiff then offered testimony tending to impeach the credibility of the witness Lee.

The defendants then moved the Court to exclude the testimony given by the plaintiff, as a witness in his own behalf, from the jury, on the ground that L. K. Saylor was an original party to the contract sued on in this cause, and was deceased. The plaintiff objected to the motion, on the ground that Lee was contradicted by other evidence in the cause, and that his evidence was impeached, and should be passed on by the jury. The Court overruled the motion, and the defendants excepted.

*Fifth Exception.*—The plaintiff offered the following prayers:

1. That if the jury find from the evidence that L. K. Saylor had authority to employ the plaintiff to work for the firm doing business under the name of The Deer Creek Iron Works, and that the defendants were the members of said firm, or held themselves out to the plaintiff as members of said firm, which the said plaintiff had reasonable grounds to believe, and did not know to the contrary, and that the plaintiff was employed by said Saylor to do certain specified work for a stipulated price per year, with the express understanding that for said sum he was to be required to do no other work; and further find that he rendered the services which he had agreed to render, and that at the request of the defendants, or their authorized agent, he rendered other services about the business of said

firm, that then he is entitled to the value of such extra services as the jury may find that he rendered.

2. If the jury believe the facts stated in the plaintiff's first prayer, that then the plaintiff is entitled to recover, although the jury may believe that Seyfert and McManus were not in fact members of the firm, or that the corporation called "Seyfert, McManus & Co.," or Saylor, were members thereof.

3. If the jury believe from the evidence in the cause that the plaintiff was employed by the defendants, or their duly authorized agent, for the year commencing the 1st of April, 1869, and ending April 1st, 1870, to superintend the making of blooms from iron ore, and that before the end of the year the defendants discharged the plaintiff from their employment; and further find that the plaintiff had faithfully and efficiently performed the work he agreed to do, and was ready and willing to continue to do so, that then the plaintiff is entitled to recover, although the jury may believe that between the 1st of April, 1869, and the time of his discharge, the plaintiff was engaged in making experiments to discover a process by which steel could be made directly from iron ore, if the jury believe such experiments did not interfere with the discharge of his duties under his agreement with the defendants.

4. If the jury believe the facts stated in the third prayer, then the measure of damages is the salary which the defendants agreed to pay the plaintiff for the whole year, after deducting the amount the plaintiff has received.

And the defendants offered the following prayers:

1. If the jury believe that the plaintiff made a contract with L. K. Saylor, acting in behalf of The Deer Creek Iron Works, and shall further believe that William M. Seyfert and John McManus are not now and never have been members of the said firm trading as "The Deer Creek Iron Works," that then the defendants are entitled to the verdict.

2. That there is no evidence in this case that William M. Seyfert and John McManus are, or have been, members of the firm trading under the name and style of " The Deer Creek Iron Works."

3. That the plaintiff is not entitled to recover in this cause on account of a variance between the contract alleged in the declaration and the contract established by the evidence.

4. If the jury believe that L. K. Saylor, acting in behalf of a firm trading under the name of "The Deer Creek Iron Works," made a contract as stated in the sixth count of the declaration of the plaintiff, and that said Saylor was a member of said firm, and beneficially interested in said contract ; and shall further believe that the said Saylor is dead, then the jury are instructed not to regard the testimony of the plaintiff, as given by himself as a witness, in making up their verdict.

5. If the jury believe the facts stated in the fourth prayer, that then there is no evidence before the jury which will entitle the plaintiff to recover on the special contract alleged in the sixth count of his declaration.

6. If the jury believe the facts stated in the defendants' fourth prayer, that then the plaintiff can recover only, if at all, under the first, second, third, fourth and fifth counts in his said declaration, and under these counts can recover for nothing beyond the period of his actual service, and is not entitled to recover ·for the period between the date of his discharge and the 1st of April, 1870, notwithstanding the jury may believe that the plaintiff was wrongfully discharged.

7. Even if the jury believe that the plaintiff is entitled to a verdict under any of the first five counts of his declaration, such verdict should not exceed in amount the sum to which the plaintiff would be entitled for services actually rendered during the period of his employment by the

defendants—said services to be paid for at the rate of six hundred dollars per annum for the stipulated service.

8. If the jury find the facts stated in the defendants' fourth prayer, that then there is no evidence of any special agreement by the defendants to pay the plaintiff a higher salary than six hundred dollars a year ; and even if the jury believe that the plaintiff rendered extra services, not provided for in his contract, he cannot recover for said extra services unless there was an express or implied agreement, to pay for the same ; that there is no evidence of any such express agreement ; and in determining whether there was any implied agreement, they should consider whether the said services were accepted by the defendants with knowledge upon their part that they were not provided for in the contract, and that there can be no acceptance unless there was a knowledge upon the part of the defendants that the plaintiff was rendering extra services under an expectation that he was entitling himself to extra compensation therefor as a matter of legal right.

9. If the jury believe that the plaintiff was employed by the defendants to experiment in making blooms or steel directly from the iron ore, that then the plaintiff was bound to serve the defendants faithfully, and to refrain from doing any act knowingly and wilfully which might affect injuriously the business of his employers, and he had no right to do any act, or engage in any business in competition with the business of his employers, or which might injure their trade or undermine their business ; and if the jury believe that the plaintiff violated this duty, and so conducted himself as that it would have been injurious to the interests of his employers to have kept him, that then the defendants had the right to dismiss him from their service, and were not bound to wait until the end of the year.

10. That there is no evidence in this cause that William M. Seyfert or John McManus ever held themselves out as

members of the firm trading under the name of "The Deer Creek Iron Works," in any such manner as would make them liable in this action.

The Court granted the plaintiff's prayers, and the fifth and sixth prayers of the defendants, but refused the first, second, third, seventh, eighth, ninth and tenth, and refused the fourth prayer as presented, but granted it with a modification, as follows:

If the jury believe that L. K. Saylor, acting in behalf of a firm trading under the name of "The Deer Creek Iron Works," made a contract as stated in the sixth count of the declaration of the plaintiff, and that said Saylor was a member of said firm, and beneficially interested in said contract, *and shall believe that these facts were known to the plaintiff;* and shall further believe that the said Saylor is dead, then the jury are instructed not to regard the testimony of the plaintiff, as given by himself as a witness, in making up their verdict.

And granted a substitute for the ninth prayer, as follows:

If the jury believe that the plaintiff was employed by the defendants to experiment in making blooms directly from iron ore, and that during the time of his engagement to serve the defendants, he was engaged and occupied in other work on his own account, which interfered with the efficient and proper discharge of his duties to the defendants, or in any manner injured their business, that then the defendants had a right to dismiss him from their service, and the plaintiff can only recover for the time he actually served them. for any extra work which he may have done during that time, if they find him entitled to pay for such extra work.

To the granting by the Court of the plaintiff's prayers, and to the refusal by the Court to grant their first, second, third, fourth, seventh, eighth, ninth and tenth prayers, the defendants excepted.

The verdict being for the plaintiff, the defendants moved in arrest of judgment, for the following reasons amongst others:

5th. Because the record of proceedings in this cause, as transmitted to this Court for trial, was without authority of law or any Court, altered by plaintiff's counsel after the jury had taken the cause and retired to their room, and without the knowledge of the defendants or their counsel.

6th. Because the declaration contained in said record transmitted from the Circuit Court for Harford County, and upon which issues had been joined, was amended without an application to the Court, after the jury had retired for consultation previous to making up their verdict, and without the knowledge of the defendants till after the jury had rendered their verdict in this cause, and the defendants were thereby deprived of a plea of abatement which they were anxious to file in the cause, and would have filed to any amended declaration, had such amendment been made to their knowledge.

The Court, (STUMP, J.,) overruled the motion in arrest of judgment, and filed the following opinion:

The motion in arrest of judgment in this cause is hereby overruled; and as to the fifth and sixth reasons assigned, it is overruled because the said alteration consisted in filling up the blanks in the succeeding sentence, from the said first day of April, 1869, to the (blank) day of (blank) in the year 1870, under the following circumstances: At the time the demurrers were overruled, the plaintiff's counsel were instructed, in presence of the defendants' counsel, who made no objections thereto, to fill up said blanks, which they stated they would do, and the Court supposed it had been done, until after the jury had retired to make up their verdict, and the Court had taken a recess to await their return, when they were informed by the plaintiff's counsel, that in the hurry

of the trial they had forgotten to fill up said blanks whereupon the Court allowed them to send the bailiff in charge of the jury to the jury room for the record, and then to fill up said blanks in it, without sending for defendants' counsel. The record was then returned to the jury in their room before they had notified the Court that they had agreed upon their verdict. It is but just to the defendants' counsel to say, that he states to the Court that he did not hear the order given by them to fill up said blanks. The defendants appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ALVEY, J.

*Albert Constable*, for the appellants.

The first question in this cause arises on the defendants' demurrer to the sixth count of the plaintiff's declaration. The plaintiff alleges that he was employed for one year, commencing on the 1st day of April, 1869 ; and further avers that he entered upon his duties and labored faithfully, &c., "from the 1st day of April, 1869, to the —— day of ——, in the year 1870, and until he was discharged."

It is entirely consistent with this allegation that he labored the entire year, *non constat*, but the day of his discharge was long after the 1st of April, 1870. This was upon demurrer, and there will be no intendments as after verdict, to cure the defect.

The plaintiff also alleges that the defendants agreed to pay him $1000, but he nowhere avers that they did not pay him. It is consistent with all the allegations that they paid the plaintiff the $1000. *Aspdin vs. Austin*, 48 *Eng. Com. Law Rep.*, 670 ; *Dunn vs. Sayles*, 48 *Eng. C. L. Rep.*, 680.

Upon the defendants' first exception we will contend that the " other party to the contract or cause of action,"

spoken of in the Act of 1864, as amended by the Act of 1868, is not restricted to a technical party. Saylor, though he were only agent, is included within the proper construction of that Act as "other party." Surely he is within the equity of it.

Upon the defendants' second exception we contend that Howard Spencer was a competent witness to prove the facts which made the plaintiff incompetent. That Spencer would not have been a competent witness upon the merits, we are ready to admit, but upon this collateral question he was clearly competent.

The third exception is a question of some interest in practice. The Court overruled the motion on the ground that the defendants had waived their right to insist upon the rule, by *pleading to the merits*. How pleading to the merits, or to anything else, affects this question, we are at a loss to understand. It is true that a defendant waives his right to a bill of particulars by pleading to the merits, but that is upon the ground that the demand of particulars is to enable him to plead. The exception states that "defendants stated to the Court that it had, at that moment, come to their knowledge, *for the first time*," that the rule had not been complied with, "which was *admitted* by the plaintiff." A waiver without knowledge is an anomaly in law as in everything else.

Defendants' fifth exception was taken to the granting of a series of prayers offered by the plaintiff, and the refusal to grant those offered by the defendants.

[Counsel here argued that on the evidence the plaintiff's prayers should have been rejected and the defendants granted.]

The competency of a witness is a question for the Court only and in this particular case the facts were simple, and those establishing the plaintiff's incompetency uncontradicted. 1 *Taylor on Evidence*, 34, 35 ; *Bartlett vs. Smith*, 11 *M. & W.*, 486 ; *Nicholson vs. the State*, 38 *Md.*, 140.

Defendants' eighth prayer correctly stated the law in regard to their liability to pay for extra work. There must be an acceptance. If this were not the law, a person might find himself ruined by bills for extras not ordered nor accepted. This is clearly stated in—*Munro vs. Butt*, 92 *E. C. L. Rep.*, 738; *Brendel vs. Strobel*, 25 *Md.*, 401.

The Court's substitute for the defendants' ninth prayer did not cover the defence which that prayer, as offered, was intended to present. *Adams' Express Co. vs. Trego*, 35 *Md.*, 47.

Upon the motion in arrest of judgment, it was argued:

1st. That the Circuit Court for Cecil County had no power to mutilate (by amendment or otherwise) the record of the Circuit Court for Harford County.

2nd. That if an amendment of the plaintiff's declaration was necessary, the only proper course was to file a new declaration.

3rd. That it was too late to amend the pleadings after the jury had retired from the bar and gone to their room to deliberate.

4th. That even if the Court had directed the counsel to fill up the blanks, their simple direction to amend cannot be treated as of itself an amendment, but the amendment in pursuance of the order must actually be made, and after the jury retire it is too late to make it.

5th. The evidence in the cause shows that defendants had a perfectly valid plea in abatement for non-joinder of the defendants; and by this manner of amendment were deprived of the opportunity to file it.

6th. The defendants were deprived of all benefit of their demurrer. Without withdrawing the demurrer they had pleaded to the sixth count. Now, if the Court had the right in this manner to amend the declaration, what becomes of the demurrer? There is no demurrer to the amended declaration; the defendants had no opportunity to file any. They could not demur again till the amended

*narr.* was filed. When the amendment was actually made, the Court was not in session, and only came in to hear the verdict of the jury. The amended record from Harford County was never seen by the Clerk or the defendants' counsel till after the jury had delivered their verdict.

There was no appearance for the appellee.

STEWART, J., delivered the opinion of the Court.

In reviewing the judgment of the Circuit Court, overruling the defendants' two demurrers—the one, to the entire declaration of the plaintiff, and the other, to the sixth count thereof; this Court must look to the declaration to see if there has been error in matters of substance, to the prejudice of the defendants.

The Code, Art. 75, secs. 2, 3, 4 and 5, require the plaintiff to make a plain statement of facts, as the ground of his action, and nothing more—the insertion of time is not necessary, except where it forms a part of the cause of action.

The subsequent pleadings on either side, are required to be of like character.

Special demurrers are abolished—general demurrers are prohibited for a mere informal statement of the cause of action. Secs. 6 and 7.

These provisions were intended in the trial of causes in the Courts, to prevent technical proceedings, and to regard only matters of substance.

According to these statutory provisions, the defendants' demurrer to the entire declaration cannot be sustained, if there be one count sufficient in substance.

There are six counts in this declaration, five of which are good and stand unimpeached—if the sixth were defective, the demurrer could not be sustained because of the five remaining good counts. The demurrer to the whole declaration was properly overruled.

The demurrer to the sixth count cannot be sustained, if that count contains a sufficient statement of the plaintiff's grievance.    The blanks are immaterial, unless they prevent a definite understanding of the complaint, which the defendants are required to meet.

That count, notwithstanding the blanks distinctly shows as the ground of the plaintiff's complaint, that he was employed by the defendants for one year, to commence on the first of April, 1869, and for his services was to receive $1000, and he avers that he entered upon the performance of the services on the first of April, 1869, and faithfully labored for the defendants from that time to the —— day of ——— in the year 1870, and until he was discharged, without cause; that he was willing and offered to perform all the services during the whole year; that he was prevented from doing so by the defendants; that he claims $2000.

It is apparent that the specification of the precise day or month in the year 1870, when he was discharged, was not of the substance of the plaintiff's claim.

The averment of such time was not necessary to be proved; if the day and month had been stated, it would have been a mere formal averment.

Any statement of a fact not necessary to be proved, is not a matter of form.    Art. 75, sec. 5 of the Code.

If the plaintiff proved that he worked for a less period than a year, and was discharged without cause, proof of such fact would be sufficient to entitle him to recover under the averment that he was engaged for the year.

If there had been an express averment that he was not paid, it was not necessary that it should be proved.    The claim for damages is a sufficient allegation that the plaintiff was not paid.

If the plaintiff could support by the proof the substantial averment, that he had rendered the services alleged; the defendants must show that he was paid.

The demurrer to the sixth count was properly overruled.

We think there was no error in overruling the defendants' objection to the competency of the plaintiff as a witness in the first exception.

Thus far Saylor was proved to have been acting for the company of the defendants, with whom as agent, the contract was alleged to have been made. Because Saylor was dead, the plaintiff was not prevented from becoming a witness.

The Act of 1868, ch. 116, amending the Act of 1864, ch. 109, refers in terms to the parties to the contract, refusing the right of the one surviving to testify when the other is dead.

However equitable it might be to extend the provisions of the law to agents, where the contract had been made by the agent who was dead; not allowing in such cases the other party surviving to testify as to the contract; judicial construction cannot take the place of legislation, and give such effect to the law.

A majority of the Court agreeing with this opinion, in other respects entertain the view, that there was error in the ruling of the Circuit Court, in the defendants' second exception, being of opinion, that the witness Howard Spencer, was a competent witness to prove that Saylor was a member of the firm, and for this error the judgment must be reversed.

There was no error in the ruling in the fourth exception.

The Court did in effect decide the question of the plaintiff's competency as a witness, and the action of the Court gave the defendants another chance before the jury, which could not injure him. The Court has the right to do this in a civil case, although the rule is different in criminal cases, for good and sufficient reasons.

If the Court was not satisfied as to the proof of his incompetency, they had no right to exclude him; if it was

doubtful they could refer the question, which was really one of fact, to the jury. As to its effect, upon the hypothesis that the jury found the fact to be that Saylor was a party, the Court could instruct the jury, as was afterwards done by the granting of defendants' fifth and sixth prayers. The defendants' fourth prayer would have accomplished the same thing if it had not been properly ruled out on other grounds, hereafter alluded to. Whether the Court decided the question in advance, or in the event of the jury so finding, could make no difference to the defendants in a case of this nature.

See, as to the rule in civil cases, *Trasher vs. Everhart*, 3 *G. & J.*, 234; *Dement's Adm'r vs. Stonestreet's Adm'r*, 1 *Md.*, 123; *Funk vs. Kincaid*, 5 *Md.*, 404; *Nicholson vs. State*, 38 *Md.*, 140.

In the third exception question is made as to the effect of the rule on plaintiff to give security for costs. *Code, Art.* 27, *sec.* 10.

Under the rule the plaintiff has until the second day of ensuing term to give the security.

During the progress of the trial, and after the plaintiff had closed his testimony, the defendants then stated to the Court that it had just come to their knowledge, for the first time, that a rule, security for costs laid upon the plaintiff, had not been complied with; which being admitted by the plaintiff, the defendants asked the Court to stop the trial until that rule should be complied with, which the Court refused, being of opinion that the defendants had waived their right to insist upon the rule, by pleading to the merits.

We find no error in the refusal of the Court to suspend the trial on such account. The motion of the defendants came too late.

The law encourages diligence on the part of suitors in the maintenance of their rights, and *laches* is discountenanced.

The rule did not pertain to the merits of the case, but was prescribed for the protection of the defendants. It did not give them the power to use it *ad libitum.* It was the defendants' duty to have insisted more promptly after the expiration of the time allowed the plaintiff to give security, for the enforcement of the rule. That should have been done before going to the trial of the cause.

After that, the plaintiff had the right to treat the enforcement of the rule as waived.

Defendants' fifth exception refers to the prayers, and is taken to the granting of plaintiff's four prayers and refusal of the defendants' first, second, third, fourth, seventh, eighth, ninth and tenth prayers.

The propositions in the plaintiff's prayers are unobjectionable, fairly presenting the questions involved, leaving the jury to apply the evidence, which, however slight it might seem to the Court, it was their province to weigh and determine.

Defendants' first prayer was properly rejected, because, in effect, it denied the liability of the defendants, Seyfert and McManus, unless the jury found they were, or had been members of the firm, known as "The Deer Creek Iron Works," at the time of the alleged contract, ignoring their liability, if they held themselves out to the plaintiff as such.

The defendants' second and tenth prayers were objectionable in asserting by the second that no evidence had gone to the jury that Seyfert and McManus had been members of the firm known as "The Deer Creek Iron Works," or as averred in the tenth, held themselves out as such.

Any evidence, unless utterly inconclusive to a rational mind, however slight it might appear to the Court, must be weighed by the jury.

It was not the province of the Court to determine what effect it ought to have upon the jury.

Besides the contract alleged in the plaintiff's sixth count, there were other counts of different import, and the jury were to apply the evidence accordingly to the issues.

The third prayer of the defendants was objectionable in making no discrimination, and there was no ground upon which the Court could have decided the question of variance presented in that prayer.

Defendants' fourth prayer, we take it, was intended to present the proposition more clearly stated in the defendants' fifth and sixth prayers, which were granted; that is, if the contract referred to in the sixth count was made out solely by the plaintiff's testimony, and Saylor was a member of the firm and dead, then the jury must not regard the testimony of the plaintiff as to said contract; assuming this to have been the design of the prayer, otherwise it was utterly indefensible, yet if the plaintiff's testimony to the special contract was to be disregarded, it was admissible, as to the other counts. The prayer was, therefore, properly refused.

Defendants' seventh prayer was properly refused, and in fact seems to have been abandoned by the defendants' counsel in his brief. The plaintiff must either recover on the contract, or on the *quantum meruit*—there could be no such measure of damages as that prayer required.

Defendants' eighth prayer was properly rejected.

If the plaintiff rendered services, the jury could infer an agreement, express or implied, to pay him.

The mere fact of rendering services useful to the defendants would furnish *prima facie* evidence of their acceptance, and in the absence of some proof to the contrary, the law would raise an obligation to pay him what they were worth, there being no proof of special value.

Under the law, as settled in *Adams' Express Co. vs. Trego*, 35 *Md.*, 47, the propositions asserted in defendants' ninth prayer were unobjectionable, and the prayer might have been granted if a similar instruction had not, in fact,

been given. But as the jury were substantially instructed under the theories of plaintiff's prayers, and this ninth prayer contained similar and no additional proposition, the refusal of the prayer was no ground of reversal.

Where the law has been stated by the Court to the jury in any prayer from the plaintiff or the defendant, any prayer embracing the same law, in substance, may be very properly refused, because it could only lead to embarrassment of the jury. *Pettigrew vs. Barnum*, 11 *Md.*, 434 ; *B. & O. R. R. vs. Resley*, 14 *Md.*, 424.

The Court's modification of the ninth prayer of the defendants was not appealed from, and is not the subject of our review.

We find no error in the refusal to arrest the judgment.

The Code, Art. 75, secs. 23 to 33, provides for amendments in the proceedings in Courts. They have always received liberal construction for the advancement of substantial justice in the trial of causes. The Courts are bound to look to the merits of all questions, and the attainment of justice in proceedings before them.

The 8th section of Art. 75 of the Code expressly provides that judgment shall not be arrested for any formal omission.

The sending for the papers after the jury had retired, and the filling up of the blanks in the sixth count, as stated in the memorandum of the Court detailing the circumstances, was not material, and whether done or not, as we have stated in regard to the demurrer to that count, made no substantial difference. Some discretion in the trial of causes and directions to the jury, must, in the nature of things, be allowed to the Circuit Court, and unless attended with some injury to a party, is not the subject of review by this Court.

This Court can only judge of the validity of the verdict by reference to the pleadings and issues in the cause. *Leopard vs. Chesapeake and Ohio Canal Co.*, 1 *Gill*, 222.

The reasons assigned for the arrest of the judgment where not ruled upon under the demurrer, were more properly pertinent to the motion for new trial.

For the error in the second exception the judgment must be reversed.

*Judgment reversed,*
*and new trial ordered.*

(Decided 10th March, 1875.)